# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| JOSHUA TAPER, | : | Case No. 1:23-cv-806 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Kimberly A. Jolson |
| JENNIFER BRANCH, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Lebanon Correctional Institution (LeCI) and former inmate at the Hamilton County Justice Center (HCJC), has filed a *pro se* Second Amended Complaint, along with exhibits. (Docs. 21, 27, 38). In the Second Amended Complaint, Plaintiff alleges violations of the First, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Ohio state law[1] against thirty-four HCJC, LeCI, and/or Hamilton County Court of Common Pleas' officials in their individual and official capacities.[2] By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

---

[1]The Court understands Plaintiff's constitutional claims to be brought under 42 U.S.C. § 1983. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 624 (1979) (Powell, J., concurring) ("Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'") (footnote omitted).

[2]Plaintiff names the following individuals as Defendants: Hamilton County Judges Robert C. Winkler and Jennifer Branch; "Ohio Small Claims Court Deputy Clerk" Holly True Shaver; Defense Attorneys Arica Underwood, Raeshon Mansoor, Marcus Coleman, and Philip Stephens; Prosecutor Anne S. Flanagan; Hamilton County Bailiff Sydney Greathouse; Hamilton County Clerk of Court Pavan V. Parikh; Hamilton County Official Court Reporter Donna Franner; Hamilton County Sheriff Charmaine McGuffey; Hamilton County Sheriff's Deputy Madison Spears; ODRC officials Annette Chambers-Smith, Chris Lambert, and Stacy Wicks; and LeCI officials Douglas Luneke, Devin Hoover, Brian Holley, Ellen Myers, Thomas Koontz, Michael Simon, Kacey Vonstein, Anthony Goodpaster, Zachary Cole, Joshua Murray, Bryan Curtis, Dustin Edward, Julio Baque, Steven Cole, Jacob Umstead, Heather Anderson, Dana Ullery, and April Barr. The **CLERK OF COURT** is **DIRECTED** to update the docket in this case to reflect the names of these Defendants.

This case is currently before the Court for review of the Second Amended Complaint to determine whether the Second Amended Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. §1915(e)(2)(B). Also before the Court are Plaintiff's Motions to Appoint Counsel (Doc. 18), Amend Exhibits (Doc. 41), and to add a new Defendant to the Second Amended Complaint (Doc. 43).

For the reasons set forth below, it is **RECOMMENDED** that the Court **SEVER AND DISMISS WITHOUT PREJUDICE** all the claims in Plaintiff's Second Amended Complaint except: it is **RECOMMENDED** his § 1983 claims challenging his 2015 Hamilton County, Ohio, criminal conviction be **DISMISSED WITHOUT PREJUDICE** because they sound in habeas corpus, *see Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (directing district court to dismiss claims without prejudice under *Heck*); it is **RECOMMENDED** his related § 1983 claims challenging a three-week delay in the hearing of and the ultimate denial of his 2023 state-court motion for judicial release be **DISMISSED WITH PREJUDICE** because they do not raise a federal constitutional issue; and it is **RECOMMENDED** his arguably related § 1983 claims concerning the alleged conditions of his confinement at LeCI and the HCJC while awaiting the hearing on his motion for judicial release, as well as actions taken by LeCI, HCJC, and/or Hamilton County Court of Common Pleas' officials that allegedly jeopardized or impugned the validity of his judicial release hearing be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

In light of the above recommendations, it is further **RECOMMENDED** that the Court **DECLINE** to exercise supplemental jurisdiction over two arguably related pendant state-law

claims, *see* 28 U.S.C. § 1367(c)(3); **DENY as moot** the Motions to Appoint Counsel and Amend Exhibits (Docs. 18, 41); and **DENY as futile** the motion to add a new Defendant (Doc. 43).

## I.    Background

Because Plaintiff's initial Complaint appeared to contain claims under both 42 U.S.C. § 1983 and 28 USC § 2254, and to seek release from prison and monetary damages, the Court issued a Deficiency Order on January 5, 2024, directing Plaintiff to clarify the nature of his lawsuit. (Doc. 5, at PageID 56–57).  The Court advised Plaintiff that if he wished to proceed with a civil rights action, he must submit an amended complaint, setting forth his civil rights claims, the facts in support of his claims, the names of the Defendants, and the relief requested.  To the extent Plaintiff sought to challenge the constitutionality of his custody, conviction, or sentence, Plaintiff was directed to file a separate habeas corpus action.  (Doc. 5, at PageID 57).

On February 8, 2024, in response to the Court's January 5, 2024, Deficiency Order, Plaintiff filed over 350 pages of documents.  (Doc. 13).  The Court was unable to understand what type of lawsuit Plaintiff wished to bring and against whom because Plaintiff had not filed a single complaint form identifying who he was suing or the facts of his claims.

Nevertheless, given Plaintiff's *pro se* status, the Court allowed Plaintiff another opportunity to comply with the Court's January 5, 2024, Deficiency Order.  (Doc. 23).  Thereafter, Plaintiff indicated to the Court that he would like to file his habeas corpus claims as a separate action and proceed in this case with his civil rights claims (*see* Docs. 27, 29), which are set forth in the instant Second Amended Complaint.[3]  Plaintiff's Second Amended Complaint supersedes Plaintiff's previous complaints and is the operative complaint.  *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all

---

[3]Plaintiff's habeas corpus action is filed under Case No. 1:24-cv-184 (S.D. Ohio).  Plaintiff has also filed a second civil rights action, which is filed under Case No. 1:24-cv-159 (S.D. Ohio).

purposes.") (quotation and citation omitted).[4]

## II.    Screening of the Second Amended Complaint

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)).  To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious.  *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).  A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke,* 490 U.S. at 328-29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke,* 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

---

[4]The Court does not address the Amended Complaint (Doc. 17) filed by Plaintiff on March 4, 2024, because it is incomplete and superseded by the Second Amended Complaint (Doc. 21).

(per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

**B.   Allegations**

In his Second Amended Complaint, Plaintiff challenges his 2015 Hamilton County, Ohio, criminal conviction and the denial of his 2023 state-court motion for judicial release following an alleged three-week delay while a prosecution witness was subpoenaed. Plaintiff also brings a series of discrete claims for alleged violations of his constitutional rights against

HCJC, LeCI, and/or Hamilton County Court of Common Pleas' officials, as well as a claim regarding an Ohio "Small Claims Court" matter. (*See generally* Doc. 21). Liberally construing Plaintiff's allegations, *see Erickson*, 551 U.S. at 94, his Second Amended Complaint can be divided into the following twenty-four claims. Where needed for clarification, the claims are separated into sub-claims.

1.    Claims challenging Plaintiff's 2015 criminal conviction against Defendants Judge Robert C. Winkler; defense attorneys Arica Underwood and Raeshon Mansoor; and Prosecutor Anne S. Flanagan. (Doc. 21, at PageID 515–16, 518).

2.    Claims challenging the denial of Plaintiff's 2023 motion for judicial release against Defendants Winkler, Judge Jennifer Branch, Flanagan, defense attorneys Marcus Coleman and Philip Stephens, Bailiff Sydney Greathouse, Clerk of Court Pavan V. Parikh, and Court Reporter Donna Franner. (Doc. 21, at PageID 517, 519–22).

3.    Claims challenging an alleged three-week delay in the proceedings on his motion for judicial release against Defendant Branch. Plaintiff claims that his motion for judicial release was originally scheduled to be heard on October 26, 2023, but was pushed back to November 16, 2023, so that the detective in his original criminal case could be subpoenaed. (Doc. 21, at PageID 519).

4.    Claims relating to the conditions of his confinement at LeCI while awaiting transport to the HCJC for the hearing on his motion for judicial release. Plaintiff alleges that he was housed in a condemned cell at LeCI that had black mold, roaches, rats, and no running water from October 24, 2023, to November 8, 2023, when he was brought to the HCJC. (Doc. 21, at PageID 519).

5.    This group contains:

(a) Claims relating to the conditions of his confinement at the HCJC while he was awaiting the hearing on his motion for judicial release against Defendant Sheriff Charmaine McGuffey.  Plaintiff claims that while at the HCJC he "had to wear the same pair of draws, socks and shirt," was denied access to educational and religious services, the law library, and mental health treatment, and was served "food that's not for human consumption."  (Doc. 21, at PageID 522).

(b) Claims that Defendants Branch, Flanagan, and McGuffey conspired to jeopardize Plaintiff's judicial-release hearing by placing him in administrative segregation two days beforehand "to use against Plaintiff in Court at the judicial hearing."  (*Id*. at PageID 522).

(c) Claims that while in administrative segregation Plaintiff's phone was "cut off" and he was allowed out of his cell for only one hour a day, during which time he remained handcuffed and in shackles.  (*Id*. at PageID 522).

6.　　Claims against Defendant Sheriff's Deputy Madison Spears for being the alleged "getaway driver for defendant Jennifer Branch" and apparently returning Plaintiff to LeCI.  (Doc. 21, at PageID 523).  According to Plaintiff, on November 21, 2023, Defendant Spears "came to the car an[d] said the prison just need the body which was the plaintiff body."  (*Id*.).

7.　　This group contains:

(a) Claims against ODRC Director Annette Chambers-Smith for holding Plaintiff against his will.

(b) Claims against Chambers-Smith for being the supervisor of the ODRC employees who Plaintiff alleges have violated his rights.  Plaintiff also alleges that Chambers-Smith visited LeCI.  (Doc. 21, at PageID 523–24).

(c) Claims that Chambers-Smith visited LeCI and "passed a policy [on] 2/8/2024 alon[g] with [Defendant ODRC Library Director] [S]tacy [W]icks that plaintiff can[']t look up his court docket." (*Id*.).

(d) Claims that Defendant Micheal Simon took Plaintiff's fingerprints on November 7, 2023, for Defendants Chambers-Smith and Branch. (*Id.* at PageID 524).

(e) Claims that Chambers-Smith and LeCI Warden Douglas Luneke held Plaintiff's LeCI cell for him while he was at the HCJC from November 8 to November 21, 2023, even though "the longest a prisoner cell can be froze is 7 calendar days." (*Id*., at PageID 524; *see also* Doc. 21, at PageID 525). Plaintiff alleges that these allegations show that the denial of his motion for judicial release was "premeditated." (Doc. 21, at PageID 524, 528).

8.    This group contains:

(a) Claims against Defendant Luneke for holding Plaintiff against his will. (Doc. 21, at PageID 525).

(b) Claims that another prisoner, Marquise Weatherton, died at LeCI on December 7, 2023, and that Plaintiff was attacked by LeCI officials on February 7, 2022. (*Id*. at PageID 526). Plaintiff additionally alleges that he was attacked "by 3 gang members who attempted to kill plaintiff for defendant staff [on] 1/1/2024." (*Id*.).

(c) Plaintiff alleges that Defendant Luneke left him in a condemned cell for Defendant Branch "with no running water[,] below freezing temperature due to heat not working[,] an[d] unlimited rats an[d] roach[es]." (*Id*.).

9.     This group contains:

(a) Claims that Defendants Devin Hoover held "exculpatory materials" for months and refused in December 2023 to print out messages between Plaintiff and Defendant Underwood. (Doc. 21, at PageID 527).

(b) Claims that Defendant Brian Holly denied grievances related to Hoover's alleged refusal to print out the messages and other unspecified matters.  (*Id*.).

(c) Claims that Defendant ODRC Chief Inspector Chris Lambert "cover[ed]" for Defendant Holly.  (*Id*.).

10.     Claims against Defendant Ellen Myers for allegedly failing to remove a fraudulent conduct report from Plaintiff's institutional record.   (Doc. 21, at PageID 527). Plaintiff alleges that Defendant Branch used the false conduct report against him to deny him judicial release, and that he was placed on 90-days of commissary restrictions because of false conduct reports.  (*Id*.).

11.     Claims against Defendant Thomas Koentz for finding him guilty of allegedly false conduct reports.  (Doc. 21, at PageID 527).

12.     This group contains:

(a) Claims against Defendant Michael Simon, a case manager at LeCI, for denying Plaintiff visitors and programming.  (Doc. 21, at PageID 528).

(b) Claims against Simon for allegedly taking Plaintiff's fingerprints on November 7, 2023, purportedly for Defendants Chambers-Smith and Branch.  (*Id.*).

(c) Claims that Simon "and his unit" were responsible for sending the gang members to attack Plaintiff on January 1, 2024.  (*Id*.).

13.     Claims against Defendant Kacey Vonstein for allegedly writing false conduct reports to keep Plaintiff on commissary restriction.  (Doc. 21, at PageID 528).

14.     Claims against Defendant Anthony Goodpaster for "hearing" the tickets that Defendant Vonstein wrote.  (Doc. 21, at PageID 528).  Plaintiff also alleges that Goodpaster retaliated against Plaintiff on July 17, 2023 "by putting a knife on plaintiff for defendants that assaulted plaintiff to put plaintiff in the hole."  (*Id.*).

15.     Claims against Defendant Sergeant Zachary Cole for assaulting him on February 7, 2022.  (Doc. 21, at PageID 529).

16.     Claims against Defendant Sergeant Joshua Murray, who Plaintiff alleges participated in the February 7, 2022, assault.  (Doc. 21, at Paged 529).

17.     Claims against Defendant Corrections Officer Bryan Curtis for allegedly assisting in the February 7, 2022, assault "right after plaintiff wrote Defendant Jennifer Branch."  (Doc. 21, at PageID 530).

18.     Claims against Defendant Medical Assistant Heather Anderson for allegedly falsifying records related to the February 7, 2022, assault.  (Doc. 21, at PageID 530).  Plaintiff alleges that Anderson did not interview him until July 26, 2022, five months after the assault "to falsify documents for defendants."  (*Id.*).

19.     Claims against Defendant Dustin Edward, the Supervisor over Segregation, for putting an inmate known for attacking others into Plaintiff's cell on July 23, 2023, while Plaintiff was in hand restraints.  (Doc. 21, at PageID 530).  Plaintiff alleges that he was attacked by the inmate.  (*Id.*).

20.     Claims against Defendant Corrections Officer Julio Baque for allegedly allowing Plaintiff to be assaulted on July 23, 2023.  (Doc. 21, at PageID 531).  Plaintiff alleges that while

10

he was at "rec" another offender was placed into his cell. (*Id.*). When he returned to the cell after rec, Baque failed to follow a policy that required him to place the other offender in handcuffs. (*Id.*). When Baque opened the cell and placed Plaintiff inside, Plaintiff was assaulted. (Doc. 21, at PageID 531).

21.     Claims against Defendant Holy True Shaver, the "Deputy Clerk" of "Ohio Small Claims Court." (Doc. 21, at PageID 534). Plaintiff alleges that she "sided with defendants Joshua Murray and Zachary Cole in case no. 0023-00441[.]"

22.     Claims against Defendants Nurse Supervisor Dana Ullery and Health Care Administrator April Barr for allegedly denying Plaintiff medical care and a consultation with an outside dermatologist, resulting in his acquiring a rare skin infection in August 2022. (Doc. 21, at PageID 532-33).

23.     Claims against Defendant Unit Manager Steven Cole relating to Plaintiff's alleged assault on February 7, 2022. (Doc. 21, at PageID 533).

24.     Claims against Defendant Jacob Umstead for allegedly giving the order to have Plaintiff assaulted on February 7, 2022. (Doc. 21, at PageID 534).

For relief, Plaintiff seeks injunctive relief on behalf of himself and other inmates and monetary damages.

## C.     Analysis

Plaintiff's Second Amended Complaint involves claims that arise out of separate incidents and involve different Defendants and issues. A plaintiff may not join unrelated claims and various Defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir.

2007) ("Unrelated claims against defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

"[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Mich.*, No. 16cv11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018); *see Harris v. Erdos*, No. 1:21-CV-104, 2022 WL 3053496, at *7 (S.D. Ohio Aug. 3, 2022). Under Fed. R. Civ. P. 21, courts have "broad discretion 'to order severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp.2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, *3 (E.D. Mich. 2007)) (alteration in original). Further, to avoid any prejudice to the plaintiff, an order severing and dismissing unrelated claims "is to operate as a severance and subsequent dismissal" of the severed claims "thereby tolling the statute of limitations as to those claims." *Harris*, 2022 WL 3053496, at *7.

"The Court therefore will look to Plaintiff's first set of factual allegations in determining which portion of the action should be considered related." *Conley v. Hess,* No. 1:20-CV-168, 2020 WL 2393759, at *4 (W.D. Mich. May 12, 2020). Plaintiff's first allegations assert claims against Defendants Judge Winkler; defense attorneys Underwood and Mansoor; and Prosecutor Flanagan challenging Plaintiff's 2015 Hamilton County criminal conviction (Claim 1). (Doc. 21, at PageID 515–16, 518). Plaintiff also brings related claims concerning his 2023 motion for judicial release against Defendants Judge Winkler, Judge Branch, Prosecutor Flanagan, defense

attorneys Coleman and Stephens, Bailiff Greathouse, Clerk of Court Parikh, and Court Reporter Franner (Claims 2; 3).  (Doc. 21, at PageID 517, 519–22).

Arguably related to the above claims are Plaintiff's allegations concerning his conditions of confinement at LeCI and the HCJC while awaiting the hearing on his 2023 motions for judicial release (Claims 4; 5(a), (c); 8(c)) (Doc. 21, at PageID 519, 522–23); his allegations against Sheriff's Deputy Spears, who apparently transported Plaintiff back to LeCI following the hearing (Claim 6) (*id*. at PageID 523); his allegations that Defendants Branch, Flanagan, and Sheriff McGuffey conspired to jeopardize his judicial release hearing by placing him in administrative segregation two days prior to his hearing (Claim 5(b)) (*id*. at PageID 522), his similar allegations against Defendants Myers and Koentz that allegedly fraudulent LeCI disciplinary convictions jeopardized his judicial release hearing (Claims 10, 11) (*id*. at PageID 527); his allegations against Defendant Simon for taking his fingerprints on November 7, 2023 (Claim 7(d); Claim 12(b)) (*id.* at PageID 524); his allegations that Defendants Chambers-Smith and Luneke "froze" his LeCI cell while he was at the HCJC for his hearing (Claim 7(e)) (*id*. at PageID 525); his allegations that Defendants Chambers-Smith and Wicks implemented a policy in February 2024 preventing him from searching his court records (Claim 7(c)) (*id*. at PageID 524); his allegations that Defendant Hoover held onto allegedly exculpatory material "for months" and refused, in December 2023, to print out messages between Plaintiff and his former attorney Underwood (Claim 9(a)) (*id*. at PageID 527); his allegations that Defendants Holley and Lambert denied grievances regarding Hoover's above actions (Claim 9(b), (c)) (*id*.); and his generalized conspiracy allegations against Defendants Branch and Chambers-Smith throughout many of the above claims (*see, e.g.,* Doc. 21, at PageID 524).  Plaintiff also appears to allege two arguably related state-law kidnapping claims for being held against his will (Claims 7(a), 8(a)).

For the reasons set forth below, however, each of the above claims is subject to **DISMISSAL**. Further, the remainder of the claims in the Second Amended Complaint (Claims 7(b); 8(b); 12(a), (c); 13-24) involve distinct factual allegations that are drawn together, at best, by conclusory conspiracy allegations, arise out of separate transactions or occurrences, are largely asserted against different Defendants, and should be **DISMISSED WITHOUT PREJUDICE** to Plaintiff re-filing a separate action or actions, as appropriate, including such claims if he so wishes. Fed. R. Civ. P. 20(a)(2), 21.

First, to the extent that Plaintiff seeks relief under § 1983 on behalf of other inmates (*see, e.g.,* Doc. 21, at PageID 523, 525), he lacks standing to do so. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989).

Next, Judges Winkler and Branch are entitled to judicial immunity from Plaintiff's claims. Judges are largely immune from liability for acts they commit while functioning within their judicial capacity. *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 11-12 (1991)). A plaintiff can overcome the application of judicial immunity only where: 1) the judge's acts were clearly non-judicial in nature and therefore outside the scope of the judge's judicial capacity; or 2) the judge's actions were taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 12. The factors that are relevant to whether an act is judicial in nature are: 1) "the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge"; and 2) "whether [the parties] dealt with the judge in his judicial capacity." *Id.*

Plaintiff does not allege any facts to suggest that Judges Winkler or Branch acted outside their judicial capacity or in the absence of all jurisdiction. Judges Winkler and Rice are therefore entitled to absolute judicial immunity on Plaintiff's claims.

14

Similarly, Defendant Prosecutor Flanagan is entitled to prosecutorial immunity from Plaintiff's claims.  "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'"  *Manetta v. Macomb Cnty. Enf't Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  This includes a county prosecutor's initiation of a prosecution and presentation of the State's case at trial.  *Imbler*, 424 U.S. at 431; *see also Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986).  Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously."  *Lomaz v. Hennosy*, 151 F.3d 493, 498 n.7 (6th Cir. 1998).

In this case, Plaintiff's claims against Defendant Flanagan arise from her prosecution of criminal proceedings involving Plaintiff and the defense against his motion for judicial release.  Because Flanagan's conduct was "intimately associated with the judicial phase of the criminal process," *Manetta*, 141 F.3d at 274, she is entitled to absolute prosecutorial immunity on Plaintiff's claims against her.

Plaintiff's claims against his attorneys, Defendants Underwood, Mansoor, Coleman, and Stephens, should be dismissed because these individuals are not state actors subject to liability under § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of America,* 102 F.3d 810, 814 (6th Cir. 1996).  A private actor acts under color of state law when his conduct is "fairly attributable to the state."  *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).  As Plaintiff's attorneys, Defendants Underwood, Mansoor, Coleman, and Stephens were not state actors subject to liability under § 1983.  *See Brown v. McCandless*, No. 1:15cv381, 2015 WL 4476955, at *3 (N.D. Ohio July

15

22, 2015) (and cases cited therein) ("[i]t is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983"); *Foster v. Ohio*, No. 1:14cv668, 2014 WL 5589016, at *1, *4 (S.D. Ohio Nov. 3, 2014) (and cases cited therein) (holding that the plaintiff's complaint against his attorney was subject to dismissal at screening stage for failure to state a claim under § 1983). Accordingly, the Second Amended Complaint should be dismissed as to Defendants Underwood, Mansoor, Coleman, and Stephens.

Nor do Plaintiff's allegations against Defendant Bailiff Greathouse for allegedly appointing Plaintiff's attorneys (Doc. 21, at PageID 521); against Defendant Clerk of Court Parikh for allegedly redacting Plaintiff's court filings (*id.*); against Defendant Court Reporter Franner for allegedly "withholding exculpatory evidence" for Judge Branch; or against Defendant Sheriff's Deputy Spears for allegedly returning Plaintiff to LeCI following his judicial-release hearing (*id.* at PageID 523) state a claim for relief. Without additional facts, the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P 8(a)(2)). Moreover, Defendants Greathouse, Parikh, and Franner are entitled to absolute quasi-judicial immunity from Plaintiff's claims. "[C]ourt officers enjoy absolute immunity from suit on claims arising out of the performance of . . . quasi-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988); s*ee also Lloyd v. Pokorny*, No. 2:20-CV-2928, 2020 WL 4455547, at *9 (S.D. Ohio Aug. 3, 2020) (applying quasi-judicial immunity to court reporters); *Tate v. Townsend*, No. 09-CV-12234, 2009 WL 2144419, at *3 (E.D. Mich. July 13, 2009) (same).

16

In addition, Plaintiff's challenges to his underlying 2015 conviction are barred by *Heck v. Humphry*, 512 U.S. 477 (1994), and should be dismissed without prejudice. In *Heck*, the Supreme Court held that a civil action under 42 U.S.C. § 1983 cannot proceed if the action serves to undermine a criminal conviction not reversed on appeal or vacated by expungement or by writ of habeas corpus. *Heck*, 512 U.S. at 486-87. "[A] state prisoner's § 1983 action is barred . . . —no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Thomas v. Eby,* 481 F.3d 434, 438–39 (6th Cir. 2007) (alteration original) (emphasis added) (quoting *Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005)).

Furthermore, Plaintiff's challenges to the short delay in and ultimate denial of his motion for judicial release fail to state a constitutional claim for relief because there is no constitutional right to early release from prison. *McQuistan v. Sheldon*, No. 1:20-CV-00656, 2023 WL 2634128, at *25 (N.D. Ohio Feb. 10, 2023), *report and recommendation adopted*, No. 1:20-CV-00656, 2023 WL 2633534 (N.D. Ohio Mar. 24, 2023).

Plaintiff's similar claims against Defendants Branch, Flanagan, McGuffey, Myers, and Koentz for allegedly jeopardizing his judicial-release hearing with false conduct violations at the HCJC and LeCI (*see* Doc. 21, at PageID 522, 527) are also subject to dismissal. As our sister court in the Eastern District of Michigan has explained:

> A prisoner has a right to have incorrect information expunged from his prison file. *See Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (recognizing constitutional right to expunge false information from file that results in deprivation of liberty). A Fourteenth Amendment failure-to-expunge claim has three parts: (1) specific information in the plaintiff's prisoner record is false; (2) there is a probability that the information will be relied on in a constitutionally significant manner; and (3) the plaintiff requested that the information be expunged but prison officials refused. *Id.* (citation omitted).

17

> Plaintiff failed to adequately plead the second element of a failure-to-expunge claim.  He did not show that the alleged erroneous information . . . affected him in a constitutionally significant manner.  . . .  Instead, Plaintiff argued that the erroneous information was used to deny him parole.  But there is no federal constitutional right to parole.  *See Greenholtz v. Neb. Penal Inmates*, 442 U.S. 1, 11 (1979).

*Jancar v. Artis*, No. 2:22-CV-12867, 2023 WL 36058, at *2 (E.D. Mich. Jan. 4, 2023).  As with parole, there is no constitutional right to early judicial release.  *McQuistan*, CV-00656, 2023 WL 2634128, at *25.  Plaintiff's claims that any of these Defendants jeopardized his judicial release hearing through false conduct violations should therefore be dismissed.

Likewise, Plaintiff's allegations against Defendants Chambers-Smith, Branch, and Simon concerning his fingerprinting on November 7, 2023, and the holding of his LeCI cell while he was at the HCJC are too conclusory to state a claim.  As set forth above, without additional facts, the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P 8(a)(2)).

Plaintiff's challenges to the conditions of his confinement at the HCJC and LeCI while he was awaiting a hearing on his motion for judicial release also fail to state a claim.  As set forth above, Plaintiff alleges that he was housed in a condemned cell at LeCI that had black mold, roaches, rats and no running water from October 24, 2023, to November 8, 2023, when he was brought to the HCJC.  (Doc. 21, at PageID 519)  Plaintiff claims that while he was at the HCJC from November 8, 2023, to November 21, 2023, he "had to wear the same pair of draws, socks and shirt," was denied access to educational and religious services, the law library, and mental health treatment, and was served "food that's not for human consumption."  (Doc. 21, at PageID 522).  He also claims that while in administrative segregation, where he was placed two days

before his judicial-release hearing, his phone was cut off and he was allowed out of his cell for only one hour a day, during which time he remained handcuffed and in shackles. (*Id*. at PageID 522). Further, Plaintiff appears to claim that the cell at LeCI was "freezing . . . due to heat not working." (*Id*. at PageID 526).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). Consequently, prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation marks omitted). However, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only extreme deprivations—those that "deny[ ] the minimal civilized measure of life's necessities"—will be found to violate the Eighth Amendment. *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).

Plaintiff's claims fail to allege facts showing the type of extreme deprivations necessary to sustain a plausible Eighth Amendment claim. *See, e.g., Jackson v. Powell*, No. 1:18-cv-466, 2018 WL 3722158, at *8 (W.D. Mich. Aug. 6, 2018) ("Plaintiff's alleged temporary deprivations of hygiene items, exercise yard, and laundry service amount to minor inconveniences that do not rise to the level of an Eighth Amendment violation."); *Figueroa v. Cty. of Rockland*, No. 16-cv-6519, 2018 WL 3315735, at *7 (S.D.N.Y. July 5, 2018) (allegations of temporary lack of ventilation, insect infestation, and feces/bodily fluids on the walls insufficient to raise constitutional concerns); *Newell v. Watson*, No. 1:14-CV-304, 2016 WL 1254355, at *8 (E.D. Tenn. Mar. 29, 2016) (allegations that "the bedding is stained and stinking due to mold, and the inmates' underwear is only washed every two weeks" were insufficient to state an Eighth Amendment claim); *Hollins v.*

19

*Curtin*, No. 1:13-CV-8, 2013 WL 1703880, at *7 (W.D. Mich. Apr. 19, 2013) ("Absent allegations that Plaintiff's basic human needs were not met, the denial of privileges as a result of confinement in administrative segregation does not give rise to an Eighth Amendment claim."); *Groomes v. Parker*, No. 08-2028, 2008 WL 4057763, at *8 (W.D. Tenn. Aug. 26, 2008) ("With respect to the claim that Plaintiff is confined to his cell and afforded limited opportunity for exercise, the confinement of inmates to their cells for twenty-three (23) hours a day does not violate the Eighth Amendment."); *J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation marks omitted); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (finding that inmates are not entitled to unlimited telephone use).[5]  Further, to the extent that Plaintiff alleges that he was denied mental health treatment at the HCJC, Plaintiff includes no allegations to support this conclusory statement.  *Iqbal*, 556 U.S. at 679.  Nor does he allege for how long the heat was broken at LeCI, that he asked for or was denied blankets, or that Defendant Luneke, against whom he makes this allegation (Doc. 21, at PageID 526), was aware that the cell was cold.  Plaintiff's Eighth-Amendment conditions of confinement claims should therefore be dismissed.

It also appears that Plaintiff intends to advance an access-to-courts claims against Defendants Chambers-Smith, Wicks, and Hoover.  (*See* Doc. 21, at PageID 524, 527).  Prisoners have a First and Fourteenth Amendment right of access to the courts.  *See Lewis v. Casey,* 518 U.S. 343, 351–54 (1996).  To state a claim that a state actor has violated that right, a plaintiff must allege an "actual injury" and official conduct that is more than mere negligence.  *See Harbin-Bey*

---

[5]Plaintiff does not allege facts showing that his phone being cut off interfered with his communicating with his attorney.  Rather, Plaintiff's allegations show that he communicated with his attorney, Defendant Coleman, on November 15, 2023.  (*See* Doc. 21, at PageID 520).

*v. Rutter,* 420 F.3d 571, 578 (6th Cir. 2005); *Gibbs v. Hopkins,* 10 F.3d 373, 379 (6th Cir. 1993). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  In addition, the underlying action cannot be frivolous.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit.").  Thus, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Applied here, Plaintiff has failed to plausibly allege an access-to-courts claim.  Plaintiff's conclusory allegation that a February 2024 policy prevents him from searching his court records and that he was allegedly denied "exculpatory materials" for months and printouts of messages by themselves fall short of demonstrating that Plaintiff suffered the requisite actual injury.  *See, e.g.*, *Whipple v. Tenn. Bd. of Paroles*, No. 18-5390, 2019 WL 1804845, at *3–4 (6th Cir. Jan. 3, 2019) (affirming dismissal of inmate's access-to-courts claim under § 1915A where inmate alleged conduct "interfered with his ability to prosecute certain lawsuits, but he did not, for instance, identify a deadline with which he was prevented from complying or a meritorious claim that he was unable to raise") (internal quotation marks and citation omitted)).  Further, Plaintiff's allegations demonstrate that was represented by counsel in his criminal matter and on his motion for judicial release. *See Holt v. Pitts,* 702 F.2d 639, 640 (6th Cir.1983) (once counsel appointed,

state has fulfilled constitutional obligation to provide full access to courts).  As set forth above, his allegations also demonstrate that he was able to communicate with is attorney prior to his judicial release hearing.  (*See* Doc. 21, at PageID 520, 522).

Additionally, Plaintiff's allegations that Defendants Holley and Lambert improperly denied grievances regarding Defendant Hoover (*see* Doc. 21, at PageID 527) fail to state a claim for relief.  *See, e.g., Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Report & Recommendation) (recommending dismissal of complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted,* 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011).

Finally, Plaintiff's generalized conspiracy claims against Defendants Branch and Chambers-Smith are insufficient to state a claim.  "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action."  *Crowley v. Anderson Cty., Tenn.,* 783 F. App'x 556, 560 (6th Cir. 2019) (internal citations and quotations omitted).  "To prevail on a civil conspiracy claim, a plaintiff must show that (1) a single plan existed, (2) the defendant shared in the general conspiratorial objective to deprive the plaintiff of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury to the plaintiff."  *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

"[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Jordan v. Stroughter*, No. 21-1204, 2022 WL 620119, at *3 (6th Cir. Feb. 23, 2022) (citations omitted).  Plaintiff's allegations here concerning an alleged conspiracy in the Second Amended Complaint are vague and conclusory.  This is not enough.  *See, e.g., Alger v. McDowell*, No. 19-12889, 2021 WL 6930585, at *4 (E.D. Mich. Dec. 27, 2021), *report and recommendation adopted*, 2022 WL 468589 (E.D. Mich. Feb. 14, 2022) (quoting *Twombly*, 550 U.S. at 556-57) ("An allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, merely parallel conduct could just as well be independent action.").  Plaintiff's assertions, which are not supported by any factual allegations that would permit a plausible inference that these Defendants shared an unlawful objective, are insufficient to state a conspiracy claim.  *See, id.*  His conspiracy claims should therefore be dismissed.

Accordingly, Claims 1-6; 7(c), (d), (e); 8(c); 9-11; and 12(b) are subject to dismissal.  In light of this recommendation, the Court should decline to exercise supplemental jurisdiction over Plaintiff's arguably related pendent state-law kidnapping claims (Claims 7(a); 8(a)).  *See* 28 U.S.C. § 1367(c)(3).

## III.    Plaintiff's Motions to Appoint Counsel, Amend Exhibits, and Add a Defendant

In Document 18, Plaintiff seeks appointment of counsel.  In Document 41, Plaintiff seeks to add exhibits to the Second Amended Complaint relating to his claims challenging the denial of his motion for judicial release.  Given the Court's recommendation to dismiss the Second Amended Complaint, Plaintiff's Motions to Appoint Counsel and Amend Exhibits (Docs. 18, 41) should be **DENIED as moot**.

23

In Document 43, Plaintiff seeks to add Prosecutor Joseph Deters as a defendant to his claims challenging his 2015 criminal conviction.  Under Federal Rule of Civil Procedure 15, a party may amend its pleading "once as a matter of course" before a responsive pleading is served.  All further amendments require leave of Court.  *See, e.g.*, *Gaasch v. Stoev*, No. 2:09-cv-2270, 2010 WL 11598109, at *2 (W.D. Tenn. Dec. 21, 2010).  Because the Court has already allowed Plaintiff to file an initial Amended Complaint (Doc. 21), leave of Court to amend is required.  *See Gaasch*, 2010 WL 11598109, at *2.

Generally, leave to amend a complaint should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Such leave should be denied, however, where an amendment would be futile—i.e., when the proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Kircher v. City of Ypsilanti*, 809 F. App'x 284, 297 (6th Cir. 2020) (citing *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010), and *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005)).

Here, the proposed amendment would be futile as Plaintiff's proposed claims against Deters are barred by prosecutorial immunity and *Heck*.  *Manetta*, 141 F.3d at 274; *Heck*, 512 U.S. at 486-87.  Plaintiff's motion to add a defendant (Doc. 43) should therefore be **DENIED as futile**.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Court **DISMISS WITHOUT PREJUDICE** Plaintiff's allegations challenging his 2015 Hamilton County, Ohio, criminal conviction (Claim 1) because they sound in habeas corpus, *see Sampson*, 917 F.3d at 882; **DISMISS WITH PREJUDICE** his related § 1983 allegations regarding a three-week delay in hearing and the denial of his 2023 state-court motion for judicial release (Claims 2; 3) because they do not raise a federal constitutional issue; and **DISMISS WITH PREJUDICE** his arguably related § 1983 allegations regarding the alleged

conditions of his confinement at LeCI and the HCJC while awaiting the hearing on his motion for judicial release, as well as actions taken by LeCI, HCJC, and/or Hamilton County Court of Common Pleas' officials that allegedly jeopardized or impugned the validity of his judicial release hearing (Claims 4-6; 7(c), (d), (e); 8(c); 9-11; 12(b)) for failure to state a claim upon which relief can be granted.

2.     The Court **DECLINE** to exercise supplemental jurisdiction over Plaintiff's arguably related pendant state-law kidnapping claims (Claims 7(a); 8(a)).  *See* 28 U.S.C. § 1367(c)(3).

3.     The Court **SEVER AND DISMISS WITHOUT PREJUDICE** the remaining, unrelated claims in Plaintiff's Second Amended Complaint (Claims 7(b); 8(b); 12(a), (c); 13-24). Fed. R. Civ. P. 20(a)(2); 21.

4.     The Court **DENY as moot** Plaintiff's Motion to Appoint Counsel.  (Doc. 18).

5.     The Court **DENY as moot** Plaintiff's Motion to Amend Exhibits.  (Doc. 41).

6.     The Court **DENY as futile** Plaintiff's motion to add a new Defendant.  (Doc. 43).

**IT IS THEREFORE ORDERED THAT**:

The **CLERK OF COURT** update the docket in this case to include each of the Defendants named in Plaintiff's Second Amended Complaint:  Hamilton County Judges Robert C. Winkler and Jennifer Branch; "Ohio Small Claims Court Deputy Clerk" Holly True Shaver; Defense Attorneys Arica Underwood, Raeshon Mansoor, Marcus Coleman, and Philip Stephens; Prosecutor Anne S. Flanagan; Hamilton County Bailiff Sydney Greathouse; Hamilton County Clerk of Court Pavan V. Parikh; Hamilton County Official Court Reporter Donna Franner; Hamilton County Sheriff Charmaine McGuffey; Hamilton County Sheriff's Deputy Madison Spears; ODRC officials Annette Chambers-Smith, Chris Lambert, and Stacy Wicks; and LeCI

25

officials Douglas Luneke, Devin Hoover, Brian Holley, Ellen Myers, Thomas Koontz, Michael Simon, Kacey Vonstein, Anthony Goodpaster, Zachary Cole, Joshua Murray, Bryan Curtis, Dustin Edward, Julio Baque, Steven Cole, Jacob Umstead, Heather Anderson, Dana Ullery, and April Barr.

## **PROCEDURE ON OBJECTIONS:**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


Date: June 6, 2024                              /s/ Kimberly A. Jolson
                                                KIMBERLY A. JOLSON
                                                UNITED STATES MAGISTRATE JUDGE

26